LOWELL WIRE FENCE COMPANY *vs.* EDWARD M. SARGENT & another.

Common carriers doing business between certain points, and not undertaking personally for the carriage of goods to any further points, but merely engaging to forward them to their destination through the established lines of transportation beyond, are not liable upon their receipt for a bill of goods " for collection " from a person beyond the termination of their route, in the absence of any special contract creating an additional obligation for the failure of other carriers, to whom in the ordinary course of their business the bill was intrusted for collection, to pay over the amount received by them upon the same.

CONTRACT against common carriers for failing to collect and pay over to the plaintiffs a sum of money. At the trial in the superior court, before *Morton,* J., a verdict was returned for the defendants upon facts and under instructions which are suffi· ciently stated in the opinion. The plaintiffs alleged exceptions.

*D. S. Richardson & B. J. Williams,* for the plaintiffs, cited *Wareham Bank* v. *Burt,* 5 Allen, 113 ; 1 Parsons on Con. 685-690, and authorities there cited.

*A. R. Brown,* for the defendants, cited *Nutting* v. *Connecticut River Railroad,* 1 Gray, 502, and cases cited ; *Brintnall* v. *Saratoga & Whitehall Railroad,* 32 Verm. 665.

HOAR, J. The plaintiffs sent by the defendants, who were expressmen between Lowell and Boston, a coil of wire fence

directed to Annapolis, in Maryland, and gave them a bill for the price of the fence to collect from the person to whom the package was addressed ; taking a receipt in these words : " Sargent & Morse, Boston Express.    Office in Boston, 33 Court Square — Lowell, in the Depot.    $37.50.    Lowell, Dec. 10th 1855.    Received of Lowell Wire. Fence Co. for coll. on Dana Stewart, bill amounting to thirty seven dollars $\frac{50}{100}$.    For Proprietors, F. Sargent."    It appeared that the defendants delivered the fence and the bill to Adams & Co. in Boston, taking a receipt for it from them, and payment for carrying it to Boston, and that Adams & Co. carried the fence to Annapolis, and delivered it there to the person named in the bill, who paid the bill and the charges for freight to the agent of Adams & Co.    There was evidence that it was the custom of the defendants to send all packages directed to places beyond Baltimore by Adams & Co.    The money received on the bill was never paid over by Adams & Co. and this suit is brought to compel the defendants to pay it.

The court instructed the jury " that they were to determine what the contract between the plaintiffs and defendants was ; that if the contract was to carry the fence to Boston and there deliver it to Adams & Co., then the defendants, upon safely carrying and delivering the fence to Adams & Co. at Boston, would thereby be discharged from all liability to the plaintiffs on account of said fence and the bill therefor from that time, and would not be liable for any loss or neglect on the part of Adams & Co., or for the amount of the bill, even if Adams & Co. had collected and held the money."    The correctness of this instruction is the question presented by the bill of exceptions.

There was no express contract in relation to the transporta-- tion of the fence ; and whether the implied contract was to carry it to Annapolis, or merely to carry it to Boston, and forward it thence by the ordinary lines of transportation, was certainly a question for the jury upon the whole evidence in the case ; in determining which they would consider the nature of the business, the advertisements or notices given by the defendants, and all the circumstances tending to show the understanding

of the parties. It was therefore properly left to the jury; and we can see no reason to think that they came to a wrong conclusion upon the evidence reported.

But no question is open as to the liability of the defendants as common carriers for the carriage of the fence, because that was carried and safely delivered according to its direction. It is only important to ascertain what the contract was, so far as it has any bearing upon the undertaking of the defendants to collect the bill which accompanied the article received for transportation.

It has been urged in argument by the counsel for the plaintiffs, 1, that the agreement to collect the bill was in writing, and should therefore have been construed by the court and not left to the jury; and 2, that Adams & Co. should have been held to be the agents of the defendants, for whose fidelity they were responsible.

We understand that the court did construe the written contract, but that the construction was an alternative one, depending upon the facts to be found by the jury to which the writing applied. The defendants by the receipt agreed that they received the bill for collection, and this was all. The duty and responsibility which this agreement created were yet to be determined, and would depend upon other facts not apparent on the face of the paper. Suppose the defendants were lawyers; the receipt of a bill for collection might authorize and require them to commence a suit upon it, to obtain a judgment and execution, and to commit the execution to an officer for service; but they would not be personally liable because the officer neglected to pay over the money. Suppose they were bankers, in Boston or Lowell; the receipt of a bill or note or draft for collection in a distant place would not oblige them to do more than to use the customary and proper agencies for collection, according to the common course of business; and they would not be responsible for the default of any substituted agent whom they were properly, by the nature of the business, authorized to employ. *Dorchester & Milton Bank* v. *New England Bank,* 1 Cush. 177. *Warren Bank* v. *Suffolk Bank,* 10 Cush. 582.

But if the bill was to be collected by a collector in the place where he resided or transacted business, a very different rule would apply.

We are of opinion that the ruling of the court at the trial was substantially right. If the defendants were expressmen doing business only between Lowell and Boston, and not undertaking personally for the carriage of goods to any farther points, but merely engaging to forward them to their destination through the established lines of transportation beyond, then, in the absence of any special contract creating a different obligation, the receipt of the bill of the goods which they had received to forward " for collection," would only require that they should send the bill with the goods through the ordinary channels of communication; and the substituted agents of transmission, if selected with due care, and according to the usual course of business, would not be their agents, but the agents of the owners of the property, and they would not be responsible for their defaults or misconduct.

The case of *Wareham Bank* v. *Burt*, 5 Allen, 113, does not conflict with this doctrine. That case was decided upon the ground of a special agreement in writing, creating a specific obligation of a very peculiar character. *Exceptions overruled.*